FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 20, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WILLIAM BRADLEY JACKSON,<br><br>Petitioner,<br><br>v.<br><br>STATE DEPARTMENT OF CORRECTIONS,<br><br>Respondent. | No. 2:18-cv-00200-SAB<br><br>**ORDER DISMISSING PETITION** |

Before the Court is Respondent's Motion to Dismiss Amended Petition for Untimeliness Under 28 U.S.C. § 2244(d), ECF No. 14. Respondent requests the Court dismiss Petitioner's amended petition for writ of habeas corpus because it is untimely and fails to raise a cognizable claim for federal habeas relief. For the following reasons, the Court grants Respondent's motion and dismisses the petition for writ of habeas corpus.

## BACKGROUND

Petitioner William Bradley Jackson is a Washington State prisoner and is currently confined at the Mayo Correctional Institution in Mayo, Florida, pursuant to a judgment and sentence by the Spokane County Superior Court. Petitioner was convicted by jury verdict of first degree murder on October 5, 2000. On November 14, 2000, the trial court sentenced Petitioner to a 672-month term of imprisonment.

**ORDER DISMISSING PETITION ^ 1**

# FACTS

The Washington Supreme Court[1] summarized the facts of Petitioner's case as follows:

> On October 18, 1999, Jackson called 911 at 8:45 a.m. to report that his nine-year-old daughter Valiree was missing from their residence in the Spokane Valley. Immediately, volunteers joined sheriff's personnel and canine units in a thorough search of the neighborhood. Deputy Scott Nelson arrived at the Jackson residence, where Valiree and Jackson had lived with his parents the previous seven months. Nelson interviewed Jackson's mother, who said she kissed a sleeping Valiree good-bye as she left for work a little before 4:30 that morning. Jackson said he had last seen Valiree at 8:15 a.m. in the front yard. Her backpack was on the front porch.
>
> Detective Madsen, who also responded, saw bloodstains on Valiree's pillow and faded blood on the bed sheet. Jackson explained that Valiree had a nose bleed the night before, but Madsen saw nothing used to stop a nosebleed. Madsen took the bedding for analysis. Detectives soon believed that Jackson had something to do with his daughter's disappearance. They informed him of their suspicion that he may have removed Valiree from the home.
>
> On October 23, 1999, police obtained a warrant to search the residence and impound and search Jackson's two vehicles, a 1995 Ford pickup and a 1985 Honda Accord (warrant # 1). On October 26, Detective Knechtel obtained a 10–day warrant (warrant # 2) to attach GPS devices to the two vehicles while they were still impounded. The devices were connected to the vehicles' 12–volt electrical systems. Use of the GPS devices allowed the vehicles' positions to be precisely tracked when data from the devices was downloaded. The vehicles were returned to Jackson but he was not informed about installment of the devices. Detective Madsen did inform Jackson that the police believed he had hastily buried Valiree's body, that animals would likely dig her up, and that the body would be found and used as evidence against him. Knechtel obtained a second 10–day warrant to maintain the GPS devices on the vehicles (warrant # 3).

---

[1] *State v. Jackson*, 150 Wn.2d 251, 256-59 (2003).

**ORDER DISMISSING PETITION ^ 2**

Data from the GPS device on the truck showed that on November 6, 1999, Jackson drove to his storage unit and then to a remote location on a logging road, the Springdale site, where the truck was motionless for about 45 minutes. Data showed that on November 10, 1999, Jackson made a trip to another remote location (the Vicari site) where he remained about 16 minutes, and then traveled to the Springdale site where the truck remained stopped for about 30 minutes, then left and stopped several other places, including the storage unit. Investigators discovered Valiree's body in a shallow grave at the Springdale site, and found evidence at the Vicari site (two plastic bags with duct tape containing hair and blood—the duct tape edge matched duct tape later found at Jackson's residence in a search pursuant to another warrant).

On November 13, 1999, after stopping at his storage unit, Jackson borrowed his neighbor's truck, telling the neighbor he had a job to finish. He borrowed the truck, he said, because he suspected he was being followed. Hunters near the Springdale site saw him in a pickup truck close to the Springdale gravesite. When Jackson returned the truck, he left a shovel in it.

A warrant was issued for Jackson's arrest that same day. In the evening police stopped him, noting that he had been driving around with an unloaded shotgun in the vehicle and acting suicidal. He was initially hospitalized but later released and charged with Valiree's murder.

At trial, the evidence showed that Valiree suffocated. From jail Jackson wrote to his parents claiming a new hunting buddy "Craig" may have kidnapped Valiree. He subsequently admitted making this up. Instead, his defense at trial was that Valiree overdosed on a prescription anti-depressant prescribed for her by her counselor. He testified at trial that he thought that the police would blame him for the death since he had been a suspect in the unexplained 1992 disappearance of Valiree's mother, and therefore he panicked and buried the body. The State presented substantial evidence that Jackson killed Valiree because he saw her as an impediment to his reuniting with his former girl friend. Valiree and the girl friend did not get along.

**ORDER DISMISSING PETITION ^ 3**

# PROCEDURAL HISTORY

## 1. Direct Appeal

Petitioner appealed to the Washington Court of Appeals. Appellant counsel's brief raised eighteen assignments of error, challenging several of the lower court's decisions regarding search warrants, arguing that it was error for the trial court to deny a change of venue, that the trial court erred in admitting certain evidence, and challenging several findings of fact and conclusions of law regarding the trial court's exceptional sentence.

On May 9, 2002, the Court of Appeals affirmed Petitioner's conviction. Petitioner sought discretionary review by the Washington Supreme Court. On September 11, 2003, the Washington Supreme Court affirmed Petitioner's conviction. *State v. Jackson*, 150 Wn.2d 251 (2003). The Washington Supreme Court issued its mandate on October 6, 2003.

## 2. Personal Restraint Petitions

On December 13, 2004, Petitioner filed a pro se personal restrain petition (PRP) with the Washington Court of Appeals. Petitioner raised one ground for post-conviction relief, arguing that his exceptional sentence was imposed in violation of *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The Court of Appeals dismissed his petition on September 26, 2005. The Washington Supreme Court denied Petitioner's request for discretionary review on December 5, 2005. The Court of Appeals issued a certificate of finality on February 7, 2006.

On October 15, 2012, Petitioner filed a second PRP with the Washington Court of Appeals. He raised one ground of relief, arguing "newly discovered evidence in the form of clinical studies, trial, and publications for the prescription drug paroxetine prove the victim's cause of death in this case is attributable to the drug and not asphyxiation by homicidal violence as theorized by the prosecution at trial." ECF No. 6-1 at 228. On June 14, 2013, the Court of Appeals dismissed

**ORDER DISMISSING PETITION ^ 4**

Petitioner's second PRP, concluding that it was time-barred under state law. The Washington Supreme Court denied Petitioner's request for discretionary review on April 8, 2014. The Court of Appeals issued a certificate of finality on May 28, 2014.

On October 29, 2015, Petitioner filed a third PRP with the Washington Court of Appeals. In this PRP, Petitioner again challenged his exceptional sentence. The Court of Appeals dismissed Petitioner's third PRP, concluding it was time-barred under state law. The Court of Appeals issued a certificate of finality on March 8, 2016.

### 3. Federal Habeas Petitions

On June 18. 2018, Petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 with the Court. ECF No. 1. Petitioner argues he is entitled to relief because he is actually innocent of his daughter's murder.

The Court directed service of the petition on August 22, 2018. ECF No. 4. Instead of filing an Answer to the petition, Respondent filed a motion to dismiss the petition as untimely. ECF No. 6.

On October 17, 2018, Petitioner filed a motion to amend his petition for writ of habeas corpus. ECF No. 9. On December 10, 2018, Petitioner filed an amended petition. ECF No. 13.

On December 20, 2018, Respondent filed a motion to dismiss Petitioner's amended petition as untimely. ECF No. 14.

## STANDARD

A petition for writ of habeas corpus on behalf of a prisoner in state custody is brought under 28 U.S.C. § 2254. Relief from § 2254 is limited to "violation[s] of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where the challenged judgment became final after April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a

**ORDER DISMISSING PETITION ^ 5**

one-year limitations period for seeking federal habeas review. *See* 28 U.S.C. § 2244(d)(1) The limitations clock begins to run from the latest of:
  A. The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
  B. The date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;
  C. The date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
  D. The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). For petitioners who seek direct review in the United States Supreme Court, the judgment becomes final when the Supreme Court either affirms the conviction or denies certiorari. *Gonzalez v. Thaler*, 565 U.S. 134, 149 (2012). For all other petitioners, the judgment becomes final when the time for pursuing direct review in the Supreme Court, or in state court, expires. *Id*. at 150.

## DISCUSSION

**I. Petitioner's Petition for Writ of Habeas Corpus is Untimely.**

**A. The AEDPA Statute of Limitations Commenced on December 12, 2003.**

The Washington Supreme Court affirmed Petitioner's conviction on September 11, 2003. The time for seeking certiorari with the United States Supreme Court began to run the next day and expired 90 days later on December 11, 2003. *See* Rule 13 of the Rules of the Supreme Court of the United States. Thus, Petitioner's conviction became final on December 11, 2003. AEDPA's limitations period therefore commenced on December 12, 2003. *Gonzalez*, 565 U.S. at 150.

**ORDER DISMISSING PETITION ^ 6**

## B. The AEDPA Statute of Limitations Tolled During Petitioner's Properly Filed PRP in State Court.

The AEDPA statute of limitations commenced on December 12, 2003, and ran for 360 days until Petitioner filed his first PRP in the Washington Court of Appeals.

The AEDPA limitations period is tolled so long as a properly filed application for habeas corpus is pending in state court. 28 U.S.C. § 2244(d)(2). "[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable [state] laws and rules governing filings." *Cross v. Sisto*, 676 F.3d 1172, 1176 (9th Cir. 2012) (quoting *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (emphasis omitted). A state habeas petition is not "properly filed" for purposes of statutory tolling under AEDPA if the state petition was determined by the state court to be untimely as a matter of state law. *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005).

In this case, Petitioner filed a PRP in the Washington Court of Appeals on December 13, 2004. This tolled the AEDPA statute of limitations until the Washington Supreme Court denied Petitioner's motion for discretionary review on December 5, 2005.

## C. The AEDPA Statute of Limitations Expired on December 10, 2005.

After the Washington Supreme Court denied Petitioner's request for discretionary review, the statute of limitations continued to run. The limitations period expired five days later, on December 10, 2005. 28 U.S.C § 2244(d)(1). Petitioner's second and third PRPs did not impact the AEDPA statute of limitations because they were not "properly filed." *See* 28 U.S.C. § 2244(d)(2); *Pace*, 544 U.S. at 414.

Petitioner filed his petition for writ of habeas corpus on June 18, 2018 – over thirteen years after the AEDPA statute of limitations expired. Thus, the petition is untimely.

**ORDER DISMISSING PETITION ^ 7**

## II. The Court Declines to Consider Whether Petitioner's Untimely Claim May Pass Through the *Schlup* Gateway Because Petitioner Fails to Raise a Cognizable Claim for Federal Habeas Relief.

Petitioner argues that the Court may nonetheless consider the merits of his untimely claim by virtue of the *Schlup* gateway. The *Schlup* gateway is an exception to the AEDPA limitations period and allows an otherwise time-barred claim to be heard on the merits. *See Lee v. Lampert*, 653 F.3d 929, 932 (9th Cir. 2011).

In order to pass through the Schlup gateway, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id*. at 327. This standard "permits review only in the 'extraordinary' case," but it "does not require absolute certainty about the petitioner's guilt or innocence." *House v, Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327). "Where post-conviction evidence casts doubt on the conviction by undercutting the reliability of the proof of guilt, but not by affirmatively proving innocence, that can be enough to pass through the *Schlup* gateway to allow consideration of otherwise barred claims." *Sistrunk v. Armenakis*, 292 F.3d 669, 673 (9th Cir. 2002) (en banc) (citing *Carriger v. Stewart*, 132 463, 478-79 (9th Cir. 1997) (en banc)).

In this case, Petitioner argues newly discovered scientific and medical evidence shows he is actually innocent of his daughter's murder. The issue, however, is that even if the Court agrees with Petitioner and finds that his claim can pass through the *Schlup* gateway, Petitioner has failed to raise a cognizable claim for federal habeas relief.

Petitioner's federal habeas claim is actual innocence. To be clear, " 'actual innocence' is not itself a constitutional claim, but instead gateway through which a habeas petitioner must pass to have this otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). The

**ORDER DISMISSING PETITION** ^ 8

*Schlup* gateway is available "only where the prisoner ***supplements*** his constitutional claim with a colorable showing of factual innocence." *Id*. (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)) (emphasis added).

"Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera*, 506 U.S. at 400. "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id*. (citing *Moore v. Dempsey*, 261 U.S. 86, 87-88 (1923)).

Petitioner's federal habeas claim is not based on constitutional error. Petitioner's claim is that he is actually innocent of the murder of his daughter. In support of his claim, Petitioner goes through the evidence and testimony presented at trial and attempts to discredit the jury's guilty verdict. "The facts presented below, along with new scientific evidence that was not presented at trial, will show that Valiree was not murdered but rather died as a result of a Paxil dosage that was too large for her and the resulting atypical reaction. Based on the following, it is more than reasonable to conclude that Valiree died of a drug overdose and that her death was not the result of asphyxiation by pillow-smothering." ECF No. 13 at 8.

Essentially, Petitioner wants the Court to act as a fact-finder and reach a conclusion contrary to the one reached by the jury on October 5, 2000. This is not permissible because "[f]ederal courts are not forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). Thus, even if the Court finds Petitioner can pass through the *Schlup* gateway, he fails to present a cognizable claim for federal habeas relief. *Herrera*, 506 U.S. at 400.

//
//

**ORDER DISMISSING PETITION** ^ 9

# CONCLUSION

For the reasons provided above, Respondent's motion to dismiss is granted. Petitioner's petition for writ of habeas corpus is dismissed.

**IT IS HEREBY ORDERED:**

1. Respondent's Motion to Dismiss Amended Petition for Untimeliness Under 28 U.S.C. § 2244(d), ECF No. 14, is **GRANTED**.

2. Petitioner's Construed Motion to Amend Petition for Writ of Habeas Corpus, ECF No. 9, is **GRANTED**.

3. Petitioner's Amended Petition for Writ of Habeas Corpus, ECF No. 13, is **DISMISSED with prejudice**.

4. Any remaining motions shall be **DISMISSED as moot**.

5. Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, a certificate of appealability is **DENIED**.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order, provide copies to counsel and pro se Petitioner, enter judgment in favor of Respondent, and **close** this file.

**DATED** this 20th day of March 2019.



Stanley A. Bastian
United States District Judge

ORDER DISMISSING PETITION ^ 10